UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of M. FRANK HIGGINS & CO., INC.<br><br>Plaintiff,<br><br>v.<br><br>DOBCO INC. and LIBERTY MUTUAL INSURANCE COMPANY<br><br>Defendants. | Civil Action No.: 7:22-CV-9599 |

## COMPLAINT

Plaintiff, the United States of America, for the use and benefit of M. Frank Higgins & Co., Inc., by and through its undersigned counsel, hereby alleges as follows:

## THE PARTIES

1. M. Frank Higgins & Co., Inc., ("Higgins" or "Plaintiff"), the use plaintiff in this action, is a corporation organized and existing under the laws of the State of Connecticut with a principal place of business at 199 White Oak Drive, Berlin, Connecticut 06037.

2. Upon information and belief, Defendant, Dobco Inc. ("Dobco"), is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business at 1 Geoffrey Way, Wayne, New Jersey 07470.

3. Upon information and belief, Defendant, Liberty Mutual Insurance Company ("Liberty"), is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, and is an insurance company duly authorized and licensed to issue insurance policies under the laws of the State of New York, having a place of business at 2000 Renaissance

1

Blvd., King of Prussia, Pennsylvania 19406 and a principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C.A. § 1331 because Higgins' claims arise under 40 U.S.C.A. §§ 3131 et seq. (commonly known as the "Miller Act"), which gives a subcontractor the right to bring a civil action against a surety on a payment bond furnished by a prime contractor to the United States government for a public works project exceeding $100,000.

5. This Court also has federal subject matter jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332 as there is complete diversity of citizenship and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00.

6. This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C.A. § 1367.

7. Venue is proper in this District pursuant to 28 U.S.C.A. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred, and the property that is the subject of the action is situated, in this District.

8. Venue is further proper in this District pursuant to 40 U.S.C.A. § 3133, as the construction contract at issue was to be performed and executed in Orange County, New York.

9. This Court has jurisdiction over Defendant, Dobco, based upon the construction contract at issue, which was executed and issued in the State of New York for a Project in the State of New York.

10. This Court has jurisdiction over the Defendant, Liberty, based upon the payment bond at issue, executed by Liberty for a Project in the State of New York.

**FACTUAL ALLEGATIONS**

**A.      Project Background**

11.     On or about September 12, 2019, Dobco, as general contractor, entered into a contract with the United States of America, by and through the U.S. Army Corps of Engineers ("USACE" or "Owner") bearing Contract Number W912DS-19-C0020 ("Prime Contract") for a federally-funded construction project known as "Renovation and Modernization of Bradley Barracks, West Point, New York" (the "Project").

12.     The Prime Contract amount was in excess of $100,000.

13.     The Bradley Barracks ("Barracks") serve as housing to 900+ Cadets and consist of an "L" shaped building split into two sections: Bradley Long ("BBL") and Bradley Short ("BBS").

14.     The Barracks consist of a 305,221 square foot, six-story structure, containing 435 rooms.

15.     Higgins is a family-owned and operated business with over 70 years of experience in the commercial flooring industry.

16.     Higgins is one of the region's leading providers of exemplary flooring products and services.

17.     On or about July 10, 2020, Higgins, as subcontractor, entered into a written agreement with Dobco, as general contractor, bearing Agreement Number 19005-CN-024 ("Subcontract"), whereby Higgins agreed to furnish and install flooring on the Project.

18.     The lump sum Subcontract amount was $3,770,000.00.

19.     Pursuant to the Miller Act, Dobco, as principal, was required to post a Payment Bond on the Project for the protection of all persons supplying labor and material for the Project. Pursuant to this requirement, on or about September 16, 2019, the Defendant Liberty issued a

Payment Bond bearing Liberty Mutual Insurance Company Bond Number 019066333 (the "Payment Bond"). A copy of the Payment Bond is attached hereto, and incorporated herein, as **Exhibit A**.

**B.      Higgins' Subcontract with Dobco**

20.     Under the Subcontract, Higgins was to provide materials, labor and installation of ceramic, quarry, and glass tiling throughout the renovated Bradley Barracks.

21.     Pursuant to the Subcontract, Dobco was responsible for providing the terrazzo tile materials.

22.     Prior to entering into the Subcontract, on or around June 15, 2020, Higgins provided its first proposal to Dobco for flooring installation. This proposal did not include leveling work.

23.     Higgins provided its second proposal to Dobco on June 17, 2020, which also did not include leveling work.

24.     On June 17, 2020, following Higgins' submission of its revised proposal, the Vice President of Dobco, Hossam Ibrahim, contacted the Vice President of Business Development for Higgins, Travis Cloud, requesting a quote to level certain discrete areas of all six floors of the building in connection with the Project.

25.     With respect to the leveling work, Dobco instructed Higgins to fill in only the "green bird bath" areas of the Floor Flatness survey, provided by Dobco to Higgins on June 18, 2020, being careful to stay off the back window wall area.

26.     Thereafter, Higgins contacted Ardex, its supplier for leveling products, to obtain recommendations for products to perform the leveling work on the Project, and provided Ardex with the Floor Flatness survey Higgins received from Dobco on June 18, 2020.

27.     On June 22, 2020, Higgins provided Dobco with a revised proposal which included

4

1/4 inch of leveling.

28. Thereafter, on June 22, 2020, Dobco provided Higgins with a Letter of Intent ("LOI") in accordance with Higgins' revised proposal to include 1/4 inch of leveling product.

29. Following issuance of the LOI, Dobco instructed Higgins to proceed with procuring the leveling material.

30. The Subcontract was subsequently executed on or about July 10, 2020.

**C.    Higgins' Performance of Leveling Work**

31. On or about July 20, 2020 Dobco approved Higgins' Ardex submittal for floor preparation, following which, on July 23, 2020, Higgins, Ardex, and Dobco were present at the Project site to plan the leveling via Ardex' PowerFlo pump truck.

32. Dobco approved the Ardex P51 primer submittal on July 27, 2020.

33. Thereafter, Higgins began shot blasting and grinding the floors on July 28, 2020 per Ardex's approved means and methods.

34. The Ardex PowerFlo truck came to the Project site on August 4, 2020 to deliver the first load of the Ardex V1200 supersacks. For the remainder of the week of August 4, 2020, the Higgins team primed floors four and five within BBL, and the Higgins and Ardex teams pumped leveler onto these floors.

35. During the weeks of August 10 and 17, 2020, the Ardex and Higgins teams pumped leveler onto floors one, two, and three, and the remainder of floor four within BBL.

**D.    Dobco's Delays to Higgins' Leveling Work**

36. Following performance of the leveling work within BBL, Higgins planned to begin the leveling work within BBS, but was delayed by Dobco. Accordingly, the Ardex PowerFlo truck demobilized from September 1, 2020 through the week of October 15, 2020.

37. Thereafter, the Higgins team used its Ardex Amp 200 pump to level the space in BBS following the same procedures from Ardex and using the same materials approved in July 2020.

38. Higgins completed the leveling work in BBS during the week of November 2, 2020.

39. Higgins notified Dobco's superintendent that the building needed to be closed up so as to avoid exposing the slab to water before it fully cured, which takes approximately 28 days.

40. Following completion of the leveling work in BBS, Higgins left the Project site for the remainder of 2020.

41. While Higgins was off the Project site, from the end of 2020 through February 2021, significant construction work was performed by Dobco and its other trade contractors on top of the self-leveler installed by Higgins in the Summer and Fall of 2020.

E.  **Higgins' Commencement of Tile Installation**

42. In late February 2021, Higgins resumed work on the Project and began installing bathroom tiles in the latrines in the center of the building.

43. Higgins planned to install terrazzo tile in the cadet rooms beginning in May 2021, when the tile, purchased by Dobco from a supplier in Italy, was scheduled to arrive.

44. However, the tile did not arrive in the United States until late August and September 2021, causing further substantial delays to Higgins' scope of work at no fault of Higgins.

45. Finally, in August 2021, nearly three months after Higgins was scheduled to begin work, Dobco sent Higgins the terrazzo tile shop drawings and the approved submittals for the new terrazzo tile installation.

F.  **USACE's Discovery of Delamination Issues and Extra Work Performed by Higgins**

46. While installing the tile, Higgins was also forced to perform extra work beyond

what was required under the Subcontract, due to damage caused by Dobco.

47. Specifically, on September 16, 2021, Higgins received notice from Dobco that the USACE had observed at least 22 cadet rooms located in BBS with delamination issues over areas containing Fiber Reinforced Polymer ("FRP").

48. FRP was installed by Dobco in many areas of the building containing weak concrete prior to Higgins' performance of its leveling work.

49. To address Dobco's deficiencies, Ardex recommended using a different primer to repair the localized areas of delamination.

50. On October 12, 2021, Dobco approved the Ardex submittal to use P82 primer, and Higgins immediately began the extra work to address the damage caused by Dobco in BBS.

51. On October 8, 2021, over one year after Higgins completed the leveling scope, Dobco issued Higgins a three-day default notice.

52. The October 8, 2021 default notice provided, *inter alia*, that "Higgins' floor leveling scope of work in all cadet rooms on all floors is defective and non-contract compliant. The floors have not been properly leveled."

53. Dobco's October 8, 2021 Notice of Default fails to take into account, however, the fact that Dobco, not Higgins, performed construction activities on the level floor without proper precautions, and failed to take proper precautions to ensure that the building temperature and humidity levels were appropriate for curing, despite Higgins' multiple reminders regarding this issue.

54. Contrary to Dobco's claims, Higgins provided the floor leveling scope in accordance with Dobco's requests in July 2020, and performed all work in accordance with Ardex's recommendations and the contract documents.

7

55. On December 8, 2021, Dobco ordered that all of Higgins' terrazzo tile installation work and leveling work stop, citing purported issues with the leveling product.

56. Thereafter, Ardex was called and Higgins brought experts from North S. Tarr consulting to the Project site to perform tensile pull tests in various locations throughout the Project.

57. The results of the pull tests were very positive with respect to the strength of the bond.

58. Notwithstanding the foregoing, in February 2021, North S. Tarr found areas where the original concrete substrate and FRP, prepared and installed by Dobco, had weaknesses and poor bonding.

59. Higgins provided the North S. Tarr reports to Dobco on December 22, 2021 and March 10, 2022.

**G.      Dobco's Improper Withholding of Subcontract Funds from Higgins**

60. Throughout the Project, Higgins completed the work as set forth in the plans, specifications, and contract documents, in addition to extra work beyond its base contract scope as referenced above, and submitted monthly requisitions or "Applications for Payment" ("AFPs") as set forth in the Subcontract.

61. Specifically, Higgins submitted monthly AFPs to Dobco on AIA Form "G702", comprised of work completed in the prior month in an itemized breakdown enclosed with the AFPs as well as documentation required by the Subcontract.

62. Submission and payment of AFPs is the manner by which Higgins was compensated for base contract work and change order work throughout the Project.

63. Through Higgins' August 2021 AFP submission, Higgins submitted monthly AFPs

to Dobco, and Dobco paid Higgins for its work.

64. Toward the end of 2021, however, Dobco began assessing unsubstantiated back charges and withholding payment from Higgins in bad faith.

65. Higgins' September 2021 AFP #12 was approved by Dobco, and executed on November 4, 2021.

66. Dobco assessed an unsubstantiated back charge to AFP #12.

67. Thereafter, on December 1, 2021, Dobco refused, in bad faith, to pay Higgins' AFP #12, citing future undocumented, unidentified, and unquantified potential offsets.

68. On December 28, 2021, Dobco approved Higgins' AFP #13 for October 2021.

69. However, on January 12, 2022, Dobco indicated that it refused to pay AFP #13, again citing future potential, undocumented, unidentified, and unquantified offsets in bad faith.

70. Thereafter, Dobco failed and refused, without basis, to pay any of Higgins' AFPs, for an entire year, from September 2021 through September 2022.

71. Further, Dobco has not provided any feedback whatsoever on any of Higgins' AFPs submitted this year.

**H.    Dobco's Failure to Compensate Higgins for Extra Work and Impacts**

72. During the course of the Project, Higgins submitted <u>twenty-six</u> (26) proposed change orders ("PCOs") in connection with extra and additional work performed and increased cost of performance, none of which have been paid by Dobco.

73. Higgins timely performed all extra and additional work, but did so with the stated and justified expectation that Dobco would compensate Higgins for said extra and additional work impacts and claims, and that based upon the agreement of the parties Dobco would compensate Higgins for extra and additional costs and associated time.

74. Higgins also continued to perform base contract work through significant impacts, including Dobco's material breach of the Subcontract in failing to pay Higgins, forcing Higgins to fund its work on the Project.

75. Dobco has failed and refused to compensate Higgins for extra and additional work performed during the course of the Project, and has refused to approve or ignored requests for compensation for the Project impacts duly submitted by Higgins.

I. **Dobco's Purported Deductive Change Orders and Property Damage Claim**

76. During the course of the Project, Dobco issued certain purported Deductive Change Orders to Higgins, in connection with which Dobco claims it is entitled to certain offsets against funds otherwise due to Higgins.

77. Dobco had no authority to issue the purported Deductive Change Orders pursuant to the terms of the Subcontract.

78. Further, had Dobco's Deductive Change Orders been properly issued (which they were not) the total sum associated with such Deductive Change Orders is significantly less than the sum due and owing to Higgins pursuant to the Subcontract.

79. Accordingly, Dobco's Deductive Change Orders cannot be cited as the basis for withholding all funds currently due and owing to Higgins.

80. Moreover, on September 6, 2022, Dobco sent a notice to Higgins and its insurer, Zurich American Insurance Co., regarding alleged "[p]roperty damage and other covered losses caused at the Project by Higgins."

81. Dobco's September 6, 2022 Notice alleges damages caused by Higgins' negligence, including damage to existing concrete and FRP, damage to terrazzo tiles belonging to Dobco, damage to installed millwork, and damage to installed furniture.

82. The purported issues set forth in Dobco's September 6, 2022 Notice were discussed ad nauseum during the course of the Project, and cannot be attributed to Higgins' work.

**J.   Current Status of the Project**

83. Higgins undertook the performance of its obligations under the Subcontract in strict and full accordance with the plans, specifications, and general conditions of the Subcontract, as well as all amendments thereto, and Higgins materially performed all its obligations under the Subcontract, including submission of change requests associated with extra work and additional compensation.

84. Higgins further followed dispute resolution provisions set forth in the Subcontract, including, but not limited to, the prior submission of the dispute to mediation on October 28, 2022.

85. As of the date of this Complaint, Higgins' work under the Subcontract is beyond substantially complete and Higgins is performing punch list items as they are received.

## COUNT I
### (Breach of Contract as against Dobco)

86. Plaintiff repeats and realleges Paragraphs 1-85 as though fully set forth herein.

87. As set forth above, on or about July 10, 2020, Higgins entered into a valid, binding, and enforceable agreement with Dobco, the Subcontract, pursuant to which Higgins agreed to perform a discrete scope of work for the Project.

88. Higgins undertook the performance of its obligations under the Subcontract in strict and full accordance with the plans, specifications, and general conditions of the Subcontract, as well as all amendments thereto.

89. Higgins materially performed all of its obligations under the Subcontract, including those which were conditions precedent to its right to full payment under the Subcontract, despite the interferences and improper acts and omissions of Dobco as described herein.

11

90. During the course of Higgins' performance of the Subcontract, Dobco ordered and directed Higgins to perform extra and additional work beyond that called for by the Subcontract and in excess of the work set forth in the plans and specifications for the Project.

91. Dobco also demanded that Higgins continue to perform under difficult conditions that were significantly more costly, and unanticipated, at the time that Dobco and Higgins entered into the Subcontract – causing Higgins to incur additional and extra costs to perform both change order work and base contract work.

92. In addition, Higgins' performance of the Subcontract was wrongfully impacted, interfered with and disrupted by the acts and omissions of Dobco and/or its agents as follows, without limitation:

   a. Dobco materially changed the nature of the Project by improperly preparing and installing FRP throughout the Project, resulting in delamination issues over areas containing FRP;

   b. Dobco actively interfered with Higgins' planned completion date by failing to timely complete work which needed to be complete prior to Higgins' performance of work, and by requiring Higgins to suspend performance of certain work;

   c. Dobco forced Higgins to experience difficult conditions in the performance of its work, including low temperatures and potential precipitation at the Project site without proper protection of Higgins' work during the Winter of 2020, which Higgins repeatedly expressed concern about;

   d. Dobco failed to purchase materials in a timely manner and arrange for their timely delivery, substantially delaying Higgins' installation of tile;

   e. Dobco failed to provide Higgins with updated Project schedules despite repeated

      requests for same;

   f. Dobco failed to follow the USACE's requirements for the Project in connection with its request for a quote from Higgins for the leveling work in the cadet room areas;

   g. Dobco failed to make reasonable efforts to promptly resolve disputes; and

   h. Dobco acted unreasonably in ordering, requiring, and directing Higgins to perform extra and additional work, which changes unreasonably extended the period of performance.

93. As a result, Higgins was required to perform extra and additional work on the Project, significantly different from that originally required by the Subcontract documents, and Higgins was required to perform such work over a significantly longer period of time than was agreed to in the Subcontract.

94. As a further result of the breaches by Dobco as described herein, Higgins suffered additional damages in that Higgins was required to maintain its personnel and equipment on the Project for a period of time substantially longer than had been planned or scheduled, thereby causing Higgins to incur additional costs; and Higgins was required to increase the scope of work above the amount originally required by the Subcontract, which also resulted in increased bond and insurance premium costs to Higgins.

95. Higgins is entitled to and has demanded compensation for all unpaid base contract work and all extra and additional work performed and increased cost of performance, and Dobco was thus obligated to pay Higgins' outstanding AFPs, approve the outstanding PCOs to the Subcontract, and pay Higgins for the extra and additional work performed.

96. Notwithstanding the foregoing, Dobco has failed and refused, without basis, to pay

any of Higgins' AFPs, for an entire year, from September 2021 through September 2022, pertaining to both base contract work and extra work.

97. Accordingly, Dobco is currently in breach of the payment provisions of the Subcontract.

98. Notwithstanding the foregoing, and despite repeated due demands and submission of monthly AFPs, Dobco has failed and refused, without basis, to pay any of Higgins' AFPs for an entire year, from September 2021 through September 2022, pertaining to both base contract work and extra work.

99. Moreover, Dobco's Deductive Change Orders totaling a sum less than that due and owing to Higgins, were improperly asserted pursuant to the terms of the Subcontract.

100. Dobco's refusal to pay Higgins its outstanding contract balance and sums associated with extra work constitutes a material breach of the Subcontract which directly and proximately harmed Higgins.

101. Dobco is liable to Higgins for: (i) actual damages in an amount to be determined at trial; and (ii) interest, costs, and attorney's fees.

## COUNT II
### (Breach of the Implied Covenant of Good Faith and Fair Dealing as against Dobco)

102. Plaintiff repeats and realleges Paragraphs 1-101 as though fully set forth herein.

103. As is true with all contracts, the Subcontract included an implied covenant that the parties will exercise their obligations under the Subcontract in good faith, deal fairly with the other party to the Subcontract, and refrain from action that would deprive the contracting parties of the benefits of their bargain.

104. As described above, Dobco has acted in bad faith, has dealt unfairly with Higgins and has attempted to deprive Higgins of its reasonable expectations under the Subcontract.

14

105. Among other things, Dobco has erected road blocks at every turn to stymie Higgins' performance on the Project, including wrongfully accusing Higgins of causing property damage on the Project and blaming Higgins for issues caused by Dobco itself, including issues caused by Dobco's faulty installation of FRP.

106. Dobco's conduct on the Project amounts to a bad faith scheme to avoid its contractual obligations to Higgins while nevertheless securing the performance-based benefit of the Subcontract for itself.

107. As a result of Dobco's intentional misconduct and breach of the implied covenant of good faith and fair dealing inherent in the Subcontract, Dobco directly and proximately harmed Higgins.

108. Dobco is liable to Higgins for: (i) actual damages in an amount to be determined at trial; and (ii) costs and attorney's fees.

## COUNT III
### (Quantum Meruit as against Dobco)

109. Plaintiff repeats and realleges Paragraphs 1-108 as though fully set forth herein.

110. Higgins provided labor and materials to, and performed work for, the benefit of Dobco and the Project, which Dobco knowingly accepted.

111. When Higgins provided said labor and materials and performed said work, it did so with the reasonable expectation it would be fully and fairly compensated for its efforts. This was known to Dobco.

112. To date, Dobco has failed and refused to pay Higgins the reasonable value of labor and materials Higgins provided, and the work it performed, despite repeated demands for payment.

113. In the alternative to the Subcontract, or in the event the Subcontract is deemed

unenforceable (which Higgins denies), or any of Higgins' claims are determined to be outside the scope of the Subcontract, Higgins is entitled to be compensated for the labor and materials it provided to, and the work it performed on behalf of, Dobco.

114. Dobco is therefore obligated to fully and fairly compensate Higgins for (i) actual damages in an amount to be determined at trial; and (ii) costs and attorney's fees.

## COUNT IV
### (Miller Act Claim as against Liberty)

115. Plaintiff repeats and realleges Paragraphs 1-114 as though fully set forth herein.

116. Upon information and belief, pursuant to the Miller Act, and to secure faithful performance and payment on the Project, Dobco obtained and delivered to the USACE a Payment Bond.

117. Under the terms of the Payment Bond, Liberty is liable to Higgins for all unpaid AFPs, including pending PCOs due and owing to Higgins on the Project.

118. Pursuant to the provisions of 40 U.S.C.A. § 3133, Higgins is a proper claimant under the Payment Bond and is entitled to bring a civil action on the Payment Bond for the amount unpaid.

119. Because Higgins stands in privity with Dobco, no prior written notice of claim is required pursuant to 40 U.S.C.A. § 3133(b)(2). Nevertheless, Higgins' claims associated with Dobco's failure to remit to Higgins the base Subcontract sums and sums associated with pending PCOs owed to Higgins on the Project were submitted to mediation with Dobco on October 28, 2022, and Higgins sent Liberty notices of such claims on March 28, 2022 and August 29, 2022.

120. Higgins last performed scope work on the Project on October 13, 2022 and continues to work on punch list work as it is made available by Dobco. Accordingly, as less than one year has elapsed since the last date Higgins performed work on the Project, Higgins' claim is

16

timely under 40 U.S.C.A. § 3133(b)(4).

121.    Higgins has complied with all rules and requirements of the Miller Act for perfecting a right of action under the Payment Bond and all conditions precedent to the making of this claim have been performed, have occurred, or have been waived by Dobco.

122.    Defendant, Liberty, by its failure to pay on the Payment Bond, has injured Higgins by delaying Higgins' compensation for work properly performed pursuant to the Subcontract, which has forced Higgins to self-fund its work on the Project, leading to significant difficulty in connection with paying Higgins' vendors.

123.    Accordingly, Liberty is liable to Higgins for the proceeds of Liberty Mutual Insurance Company Bond Number 019066333 in an amount to be determined at trial, plus interest, attorneys' fees, and court costs and disbursements.

## PRAYER FOR RELEIF

**WHEREFORE,** Higgins respectfully asks this Court to enter judgment in its favor against Dobco and Liberty, granting the following relief:

A. The entry of judgment in favor of Higgins and against Dobco on Counts I through III;

B. The entry of judgment in favor of Higgins and against Liberty on Count IV;

C. Money damages;

D. Punitive damages;

E. Prejudgment interest;

F. Reasonable attorney's fees, costs and exemplary damages; and

G. Such other and further relief as may pertain at law, in equity, or pursuant to statue.

Dated: November 9, 2022              Respectfully submitted,

By:   */s/ Peter E. Strniste, Jr.*
      Peter E. Strniste, Jr. (5373188)
      pstrniste@grsm.com
      Gordon Rees Scully Mansukhani, LLP
      One Battery Park Plaza, 28th Floor
      New York, New York 10004
      Tel.: (212) 269-5500
      Fax: (212) 269-5505