USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/17/2023

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
United States of America, for the use and benefit of M. Frank Higgins & Co., Inc., M. Frank Higgins & Co., Inc.

                Plaintiffs-Counter Defendants,

      -against-

Dobco Inc.,

                Defendant-Third-Party Plaintiff-Counter Claimant,

Liberty Mutual Insurance Company,

                Defendant,

Merchants National Bonding, Inc.,

                Third-Party Defendant.
-------------------------------------------------------------------X

22-cv-9599 (CS) (VR)

**ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**

      The parties inform the Court of three pending discovery disputes that require the Court's guidance: (1) the assertion by M. Frank Higgins & Co., Inc. and Merchants National Bonding, Inc. that documents and communications between them are protected by the common interest doctrine; (2) the assertion by Higgins and Merchants that documents and communications exchanged by and between them and (i) Partner Engineering, (ii) J.S. Held, (iii) North S. Tarr, (iv) Niagara Research Associates, and (v) the International Masonry Institute, are protected by the consulting expert privilege; and (3) the parties' negotiation of an electronically stored information ("ESI") protocol. (ECF No. 42 (Ltr.). The Court addresses each of these issues below.

I.        **Higgins' and Merchants' Invocation of the Common Interest Doctrine**

Higgins and Merchants assert that their communications are subject to the common interest privilege and therefore not subject to discovery by Dobco in this case. (ECF No. 42 at 1–2). The common interest doctrine is "an extension of the attorney-client privilege," *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989), and the work-product doctrine, *Smith v. Pergola 36 LLC*, No. 22-cv-4052, 2022 WL 17832506, at *7 (S.D.N.Y. Dec. 21, 2022). Thus, any document or communication potentially protected by the common interest doctrine must first satisfy the elements of the attorney-client privilege or work-product doctrine. *Smith*, 2022 WL 17832506, at *7. "[T]he attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Krug*, 868 F.3d 82, 86 (2d Cir. 2017). The work-product doctrine protects materials "prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Under the common interest doctrine, those communications voluntarily made among different parties and their attorneys (which would ordinarily waive the privilege) are not waived "where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel in the course of an ongoing common enterprise and multiple clients share a common interest about a legal matter." *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015).

Here, Higgins and Merchants appear to be seeking a blanket application of the common interest doctrine so that all their communications are shielded from discovery. Although a common interest privilege may apply to *some* of the communications between Higgins and Merchants by virtue of their surety relationship, it does not automatically apply to every

communication exchanged between them at every point in time and for all purposes. Indeed, the common interest privilege does not transform an otherwise non-privileged communication, or a document prepared in the ordinary course of business, into a protected one simply because it was exchanged between a principal and its surety. *See, e.g., United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (noting that work product protection will be withheld from "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation"); *accord In re Grand Jury Subpoena Dated Oct. 22, 2021*, 282 F.3d 156, 161 (2d Cir. 2002) ("Broad categorical statements about the scope of the work product privilege are risky, as individual applications are highly fact specific."). Rather, as a prerequisite, Higgins and Merchants have the burden to show how the attorney-client and work-product privileges apply. *Am. Oversight v. U.S Dep't of Just.*, 45 F.4th 579, 593 (2d Cir. 2022) ("[T]he party invoking work-product protection . . . bears the burden of demonstrating that a withheld document qualifies as such . . . ."); *Krug*, 868 F.3d at 86 ("The parties asserting [attorney-client] privilege . . . bear the burden of establishing its essential elements.") (alterations omitted).

To assess the applicability of the common interest privilege in this case, the Court needs additional facts about when the common interest may have been triggered and to which specific communications it may apply. To that end, the Court needs clarity on the following information:

(1) the chronology of when and to whom Dobco sent its notice(s) of default, and the nature of those notices;

(2) whether and when Higgins and/or Merchants retained outside counsel in response to such notices of default;

(3) the date Merchants denied performance on the bond or otherwise agreed to stand behind its principal Higgins and deny Dobco's claim;

(4) the nature of, the parties to, and the dates of, the communications and documents Higgins and Merchants seek to shield under the common interest doctrine via the attorney-client privilege, including whether the communications and documents were confidentially made between an attorney and a client for the purpose of obtaining legal advice; and

(5) the nature of, the parties to, and the dates of, the communications and documents Higgins and Merchants seek to shield under the common interest doctrine via the work-product doctrine, including whether the work product was made in the ordinary course of business or in anticipation of litigation.

## II.     Merchants' Investigation

The parties also appear to dispute whether documents that Merchants created during its investigation of Dobco's claim under the performance bond are privileged. (ECF No. 42 at 2, 4–5). As an initial matter, the Court recognizes that there may be distinctions between an insurer and a surety for purposes of analyzing whether Merchants' investigation is privileged. *See, e.g.*, *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 140 n.19 (1962) ("[S]uretyship is not insurance."). However, the Court is inclined to believe that the application of the work-product doctrine to an insurer is analogous to the application of the doctrine to a surety. In both the insurer and surety contexts, "it is often difficult to determine when work product protection might apply." *99 Wall Dev. Inc. v. Allied World Specialty Ins. Co.*, No. 18-cv-126, 2020 WL 2730944, at *7 (S.D.N.Y. May 26, 2020). "This is because it is routine for insurance companies to investigate claims while at the same time the potential for litigation is ever present." *Id.* Similarly, a surety has a duty to investigate claims, *see U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 80 (2d Cir. 2004),[1] and, at the same time, the potential for litigation exists. *See United States v.*

---

[1] *See U.S. Fid. & Guar.*, 369 F.3d at 80 (noting that a surety "arguably had a duty to protect [its] own interests . . . by investigating" a project following notice that the principal had defaulted); *see also Int'l Fid. Ins. Co. v. Aulson Co.*, No. 11-cv-9240, 2012 WL 6021130, at *7 n.4 (S.D.N.Y. Dec. 4, 2012) (referring to "a surety's duty to reasonably investigate claims brought

*Seaboard Sur. Co.*, 817 F.2d 956, 959 (2d Cir. 1987) ("[A] surety has the option, when its principal is default-terminated, of either coming in and completing the project or paying the government its damages, essentially the cost of completion. A surety may, of course, also challenge the propriety of the default termination, thereby, in effect, denying liability on the bond.") (citation omitted).

In the insurer context, "[g]enerally, courts in this District have found that documents created by the insurer after it has declined coverage are presumed, or at least more likely, to have been created in anticipation of litigation and to be work product, whereas documents that are part of the claim investigation process are not typically work product." *99 Wall Dev.*, 2020 WL 2730944, at *7. "Other courts, instead of employing that presumption, have adopted a more flexible case-by-case approach." *Roc Nation LLC v. HCC Int'l Ins. Co.*, No. 19-cv-554, 2020 WL 1970697, at *3 (S.D.N.Y. Apr. 24, 2020) (internal quotation marks omitted). The Court believes it cannot make such a presumption in lieu of a case-by-case assessment of the facts. *See Adlman*, 134 F.3d at 1202–03; *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97-cv-6124, 2000 U.S. Dist. LEXIS 7939, at *36–44, *34 n.7 (S.D.N.Y. June 7, 2000) (assessing the facts where a surety invoked the work-product doctrine as to documents prepared by a surety during its investigation).

To assess whether Merchants' investigation may be protected by the work-product doctrine, the Court needs additional information about when the investigation was conducted and for what purpose. To that end, the Court needs clarity on the following:

---

against its principal by a third party"); AIA Risk Management, *Performance Bonds and Sureties—Infrequent Troubles*, AM. INST. OF ARCHITECTS (Dec. 14, 2020), https://www.aia.org/ articles/6356995-performance-bonds-and-sureties--infrequent (discussing the surety's investigation/due diligence review).

(1) whether Merchants has a statutory duty to investigate Dobco's claim under the performance bond;

(2) when Merchants learned of the notice(s) of default;

(3) when Merchants conducted its investigation and for what purpose;

(4) if and when Merchants hired outside counsel in connection with the investigation;

(5) when Merchants denied performance on the bond or otherwise agreed to stand behind its principal Higgins and deny Dobco's claim;

(6) whether, and to what extent, Merchants' investigation differed from those it performed in the ordinary course of its business; and

(7) whether Merchants believes any meaningful distinctions exist between an insurer and a surety as to the application of the work-product doctrine to investigation-related materials.

### III. Higgins' and Merchants' Invocation of the Consulting Expert Privilege

Higgins and Merchants assert that documents and communications exchanged by and between them and various consulting experts are privileged and not subject to discovery. (ECF No. 42 at 2–3). Under Fed. R. Civ. P. 26(b)(4)(D), "[o]rdinarily, a party may not . . . discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." "The rule is intended to allow litigants to consult experts in order to evaluate a claim without fear that every consultation with an expert may yield grist for the adversary's mill." *Agron v. Trs. of Columbia Univ.*, 176 F.R.D. 445, 449 (S.D.N.Y. 1997) (internal quotation marks omitted). "In determining whether an expert was hired in anticipation of litigation, the court must examine the total factual situation in the particular case. To conclude that an expert was hired in anticipation of litigation, a lawsuit need not have been filed, but there must have existed more than a remote possibility of litigation." *Bank Brussels Lambert v. Chase*

*Manhattan Bank, N.A.*, 175 F. R.D. 34, 43 (S.D.N.Y. 1997) (citation and internal quotation marks omitted).

As with the common interest privilege, it appears that Higgins and Merchants seek a blanket ruling that all documents and communications exchanged by and between them and various consulting experts are privileged and not subject to discovery. Although the consulting expert privilege may be applicable to some or all of these experts, the Court agrees with Dobco that Higgins and Merchants cannot conceal prior communications with professionals engaged in the ordinary course of business by transforming them into non-testifying experts. Instead, the Court must examine the particular facts to determine whether the experts were retained or specially employed in anticipation of litigation. To that end, the Court needs clarity on the following:

(1) when and by whom each of the experts (i.e., Partner Engineering, J.S. Held, North S. Tarr, Niagara Research Associates, and the International Masonry Institute) were retained and for what purpose;

(2) whether any reports from the foregoing experts were provided to Dobco, and if so, which reports were provided and when; and

(3) whether and to what extent any of the experts' reports became discoverable based on Higgins's specific reliance upon those reports in the Complaint.

\*\*\*

Because the Court needs additional facts and information from the parties regarding the application of the common interest doctrine, the nature of Merchants' investigation, and the consulting expert privilege, the parties are directed to respond by joint letter to the questions identified in Sections I, II, and III above by no later than **September 7, 2023**. Based on the number of issues involved, the Court waives its standard page limitations under its Individual Practices for letters and pre-motion letters.

**IV.    ESI Protocol**

The parties disagree on how searches for electronically stored information (ESI) should be conducted and are therefore unable to agree on the terms of an ESI protocol. (ECF No. 42 at 3–4, 6). Higgins and Merchants argue that "the parties' search terms should be crafted in a manner intended to locate relevant documents, and that the parties should be required to produce all non-privileged documents that hit on one or more search terms." (*Id.* at 3). Dobco argues that "Higgins and Merchants' request that Dobco produce every single electronic communication that includes at least one of the to-be-determined search words, without considering relevance or proportionality to the needs of the case, is tantamount to engaging in an impermissible fishing expedition that is well beyond the scope of permissible discovery." (*Id.* at 6).

Although there is nothing improper about parties agreeing to produce all documents generated from an ESI search protocol (as proposed by Higgins and Merchants), the Court will not order an unwilling party to do so. *See, e.g., Royal Park Invs. SA/NA v. HSBC Bank USA Nat'l Ass'n*, No. 14-cv-08175, 2016 WL 11805202, at *1 (S.D.N.Y. July 15, 2016) ("[T]he receiving party is not entitled to non-responsive documents, and thus failing to conduct a subsequent manual review gives that party more than it is entitled to."). ESI is not exempt from Rules 26 and 34 of the Federal Rules of Civil Procedure, *see Raine Grp. LLC v. Reign Cap., LLC*, No. 21-cv-1898, 2022 WL 538336, at *1 (S.D.N.Y. Feb. 22, 2022), which only obligate a party to produce information that is relevant and responsive. *See* Fed. R. Civ. P. 26(b)(1) (limiting the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense"); Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b) . . . ."); *Raine Grp.*, 2022 WL 538336, at *1 ("[A]n ESI protocol and search terms work in tandem with the parties' obligations under the Federal Rules and do not replace a party's

independent obligation to produce electronic (or paper) documents that are reasonably accessible, relevant, and responsive within the meaning of Rule 34."). Search terms, even when narrowly tailored, may still produce some amount of non-responsive documents. As such, Dobco is entitled to review its documents to ensure that they are responsive to the discovery demands even if they hit on one or more of the parties' agreed-upon search terms. In doing so, the Court expects Dobco to promptly produce all non-privileged documents responsive to the parties' document demands, except for those that it properly withholds based on an objection.

Based on the parties' filings, it appears that they have not yet engaged in any meaningful dialogue about proposed search terms, custodians, and date ranges to be applied to any searches for ESI. Without such discussions, arguments about relevance and burden are speculative at best. It is standard practice for the negotiation of search protocols to be an iterative process that allows parties to narrowly tailor search terms, custodians, and date ranges to locate responsive and non-privileged documents for production. Generally, if the search protocol is narrowly tailored and tested by both parties, they can minimize concerns about fishing expeditions and the production of large quantities of non-responsive documents.

With the general ESI protocol dispute now resolved and with the foregoing in mind, the parties are directed to meet and confer to negotiate search terms, custodians, and date ranges that are (1) narrowly tailored to achieve responsive search results, (2) proportional to the needs of the case, and (3) not unduly burdensome, costly, or voluminous. By no later than **September 7, 2023**, the parties shall submit a joint letter, providing the Court with an update on the status of these negotiations.

DATED: White Plains, New York
August 17, 2023

_____
VICTORIA REZNIK
United States Magistrate Judge

10