UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA for the use and
benefit of M. FRANK HIGGINS & CO., INC.

        Plaintiff,

v.

DOBCO INC. and LIBERTY MUTUAL                Case No. 7:22-CV-09599(CS)
INSURANCE COMPANY

        Defendants.
-----------------------------------------------------------X

DOBCO, INC.,

        Counterclaimant/Third-
        Party Plaintiff,

v.

M. FRANK HIGGINS & CO., INC. and
MERCHANTS NATIONAL BONDING, INC.,

        Counterclaim Defendant/
        Third-Party Defendant.
-----------------------------------------------------------X

## JOINT SUBMISSION AND ~~PROPOSED~~ ORDER ESTABLISHING ESI PROTOCOL, CLAWBACK/NON-WAIVER AGREEMENT, AND CONFIDENTIALITY AGREEMENT

Use Plaintiff/Counter-Claim Defendant, M. Frank Higgins & Co., Inc. ("Higgins");

Counterclaim Defendant, Merchants National Bonding, Inc. ("Merchants"); Defendant/Counter-

Claim Plaintiff, Dobco, Inc. ("Dobco"); and Defendant, Liberty Mutual Insurance Company

("Liberty") (each individually a "Party" and collectively, the "Parties") have stipulated to the

following procedures related to electronic discovery and the exchange of documents related to

the above-captioned matter ("ESI Agreement"). This Joint Submission and Order (and any

1

subsequent to this) shall be the governing document(s) by which the parties and the Court manage the electronic discovery process in this action. The parties and the Court recognize that this Joint Submission and  Order is based on facts and circumstances as they are currently known to each Party, that the electronic discovery process is iterative, and that additions and modifications to this Submission may become necessary as more information becomes known to the Parties. The Parties agree modifications to this ESI Agreement may be made in writing by agreement of the Parties or by the Court, subject to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of New York ("Local Rules"), and the Individual Practices of Magistrate Judge Victoria Reznik. Upon review of the record, and the Parties' representations, the Court determines that there is good cause for adopting the Parties' stipulated protocol for electronic discovery, clawback/non-waiver agreement, and confidentiality agreement. Accordingly, it is hereby ORDERED as follows:

## I.      DEFINITIONS

A.      **"The Project"** or **"Project"** means the Renovation and Modernization of Bradley Barracks, West Point, New York.

B.      **"Electronically Stored Information"** or **"ESI,"** as used herein, means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape, cellular telephones or other mobile devices or other real or virtualized devices/media.

C.      **"Document"** is defined to be synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a)(1)(A).

D.      **"Custodian"** means an individual having administrative control of a document or electronic file which is potentially relevant to this action.

E.      **"Native Format"** means the format of ESI in the application in which such ESI was originally created and/or is currently used.

F.      **"Metadata"** means and refers to information about information or data about data, and includes without limitation: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

G.      **"Extracted text"** means the text extracted from a native file and includes all header, footer, and document body information.

H.      **"Static image"** means a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems (e.g., TIFF image).

I.       **"Load/unitization file"** means an electronic file containing information identifying a set of processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A load/unitization file will also contain data relevant to the individual documents, including extracted and user-created metadata and coded data, as well as OCR or extracted text.

J.      **"Media"** means an object or device, including but not limited to a disc, tape, computer, or other device, whether or not in the producing Party's physical possession, on which data is or was stored.

K.      **"Bates number"** refers to a numbering system used to identify individual pages of documents where each page (or native file) is assigned a unique, sequential number, used in conjunction with a designated prefix to identify the producing Party.

## II.    GENERAL PROVISIONS

A.      This ESI Agreement incorporates the definitions in Local Rule 26.3. The term "Producing Party" refers to any Party that has (1) received a request for documents or (2) produced documents in the instant litigation (the "Litigation"). The term "Receiving Party" refers to any Party that has (1) requested documents or (2) received documents in this Litigation. A Party is a Producing Party with respect to documents it has produced or has been requested to produce, and a Party is a Receiving Party with respect to documents it has requested or received.

B.      This ESI Agreement applies to documents produced or disclosed in the Litigation, regardless of whether they were produced (i) pursuant to Fed. R. Civ. P. 26(a)(1);  (ii) in response to formal or informal discovery requests under Fed. R. Civ. P. 16, 33, 34, or 45; or (iii) in any other manner.

C.      This ESI Agreement shall not enlarge, reduce, or otherwise affect the scope of discovery in this Litigation as provided by the Local Rules, the Federal Rules of Civil Procedure, and the Court's orders, nor imply that documents produced under the terms of this ESI Agreement are discoverable, relevant, or admissible in this Litigation or any other action.

D.      The Parties agree to promptly alert all other parties to this Litigation concerning any technical problems associated with complying with this ESI Agreement. To the extent a Party

determines that compliance with this ESI Agreement imposes an undue burden, the Parties shall promptly confer in an effort to resolve the issue.

E.    **Competence:** Counsel certify that they are sufficiently knowledgeable in matters relating to their client(s)' technological systems to competently discuss issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.

F.    **Meet and Confer:** Pursuant to Fed. R. Civ. P. 26(f), counsel **must** meet and confer regarding matters relating to electronic discovery before the Initial Pretrial Conference(the Rule 16 Conference). Counsel now certify that they met and conferred to discuss matters relating to electronic discovery on January 11 and 12, 2024. Consistent with their obligations, the Parties will attempt to resolve, in person, in writing (including by email), or by telephone, disputes regarding the matters set forth herein prior to filing a motion with the Court or otherwise seeking judicial relief. If the Parties are unable to resolve a dispute after a good faith effort, the Parties may seek Court intervention in accordance with Local Rule 37.2 and the Court's individual rules of practice.

G.    **Unresolved Issues:** After the meet-and-confer conference(s) taking place on the date(s) listed above, the following issues remain outstanding and/or require court intervention: ___ Preservation; ___ Search and Review; ___ Source(s) of Production; ___ Form(s) of Production; ___ Identification or Logging of Privileged Material; ___ Inadvertent Production of Privileged Material; ___ Cost Allocation; and/or _X_ Other. Please briefly describe any specific issues below:

> **None at this time.**

H.    **Preservation:**

(a)    The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for

preservation, including but not limited to: retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc. To the extent that the parties have reached agreement as to preservation methods, provide details below:

**See Articles III – X below.**

I. **Search and Review**

(a)    The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. Some of the approaches that may be considered include: the use and exchange of keyword search lists, "hit reports," and/or responsiveness rates; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling; etc. To the extent the parties have reached agreement as to search and review methods, further details are set forth below.

(b)    State if the parties anticipate the need for judicial intervention concerning the search and review of electronically stored information:

**Not at this time.**

J. **Production:**

(a) Source(s) of Electronically Stored Information: The parties anticipate that discovery may occur from one or more of the potential source(s) of electronically stored information referenced in Sections I(B) above and III(B) below.

(b) Limitations on Production: The parties have discussed factors relating to the scope of production, including but not limited to: (i) number of custodians; (ii) identity of custodians; (iii) date ranges for which potentially relevant data will be drawn; (iv) locations of data; (v) timing of productions (including phased discovery or rolling productions); and (vi) electronically stored information in the custody or control of non-parties. To the extent the parties have reached agreements related to any of these factors, those terms are set forth below.

**See Articles III – X below.**

(c) Form(s) of Production:

(1) The parties have reached the following agreements as to the form(s) of productions as set forth below.

(2) The parties anticipate the need for judicial intervention regarding the following issues concerning the form(s) of production:

**None at this time.**

(d) Privileged Material:

(1) Identification: The parties have agreed to the following method(s) for the identification (including the logging, if any, or alternatively, the disclosure of the number of documents withheld), and the redaction of privileged documents:

**See Article IV(D) below.**

(2) Inadvertent Production/Claw-Back Agreements: Pursuant to Fed R. Civ.Proc. 26(b)(5) and Fed. R. Evid. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents

(e.g. "quick-peek" agreements, on-site examinations, non-waiver agreements or orders pursuant to Fed. R. Evid. 502(d), etc.):

**See Article IX below.**

(3) The parties have discussed a 502(d) Order: Yes _X_; No ___.

**See Article IX below.**

(e) Cost of Production: The parties are in the process of analyzing their client's data repositories and estimating the costs associated with the production of electronically stored information.

(1) Costs: **TBD.**

(2) Cost Allocation: The parties have considered cost-shifting or cost-sharing and have reached the following agreements, if any

**None at this time.**

(3) Cost Savings: The parties have considered cost-saving measures, such as the use of a common electronic discovery vendor or a shared document repository, and have reached the following agreements, if any:

**None at this time.**

(f) State if the parties anticipate the need for judicial intervention concerning the production of electronically stored information:

**Not at this time.**

K. The next scheduled meet-and-confer conference between the parties to address electronic discovery issues, including the status of electronic discovery and any issues or disputes that have arisen since the last conference or Order, shall take place on: January 31, 2024. The next scheduled conference with the Court for purposes of updating the Court on electronic discovery

issues has been scheduled for _____**TBD**_____. Additional conferences, or written status reports, shall be set every four (4) weeks, as determined by the parties and the Court, based on the complexity of the issues at hand. An agenda should be submitted to the Court four (4) days before such conference indicating the issues to be raised by the parties. The parties may jointly seek to adjourn the conference with the Court by Letter/Motion at least 48 hours in advance of a scheduled conference, if the parties agree that there are no issues requiring Court intervention.

### III.    NON-EMAIL ESI

    A.    <u>Production of Project-Related ESI</u>: Parties will produce categories of ESI that can easily be identified and isolated (e.g., non-email data stored in a project/case-specific network-drive subfolder) without the use of search terms or other agreed-upon advanced search methodology. Any non-email ESI shall be the subject of manual searches by the Parties to the extent that Documents responsive to the Parties' document requests exist in non-email ESI or hard copy format. Subject to the removal of any privileged/non-responsive documents, and pursuant to the technical specifications in Sections V and VI, below, the producing Party shall produce all responsive documents in the relevant file folders.

    B.    <u>Identification of Non-Email ESI Sources</u>: At least three (3) business days prior to the meet and confer referenced in Section IV(A), below, each Party shall identify to the other Parties all non-email data sources likely to possess non-email ESI relevant to this Litigation, including a brief description of each data source and the time period it was utilized in connection with the Project. For the purposes of this ESI Agreement, "data sources" include computer systems, employee desktop and laptop computers, cellular telephones, mobile devices and third-party storage systems that create and/or store non-email ESI. "Data sources" also include computer media or electronic sites where ESI is stored, such as shared directories.

C.     The parties shall comply with the November 16, 2023, ruling of the Court with respect to production of messages maintained on or transmitted between cellular phones and other mobile devices ("Texts").  Counsel for the parties shall meet and confer promptly as to how to achieve collection and production of such ESI.  Prior to the meet and confer, counsel shall confer with their clients to identify which employees communicated by Texts, and shall disclose the identities of such employees to opposing counsel.  Counsel shall negotiate in good faith to attempt to reach a consensus on a reasonable and mutually acceptable method for extracting the Texts for production.

## IV.    EMAIL DISCOVERY

A.     <u>Agreement on Document Custodians and Search Terms</u>:

No later than **January 31, 2024**, the Parties shall meet and confer for the purpose of identifying Custodians from within their organizations who are knowledgeable about and were involved in the core issues or subjects of this case, and shall reach agreement as to which Custodians' emails will be searched in connection with the production of email discovery. The Parties shall further meet and confer, by the aforementioned date, and reach agreement on search to terms and date ranges to be used for electronic searches of the emails from the Custodians agreed to, as set forth above.  At least three (3) business days prior to the meet and confer, each Party shall:

i.      Identify to the other Parties all Custodians reasonably believed to control and possess emails relevant to the Litigation and provide a brief description of each Custodian's title, tenure, and responsibilities; and

ii.     Identify proposed search terms, date range(s), and/or other proposed limitations to be applied to the prospective email searches.

The Parties reserve their rights to object to any of the other Party's proposed search terms, date range(s), requested Custodian(s) and/or other proposed limitations to be applied to the prospective email searches. Notwithstanding the foregoing, the Parties agree to use their best efforts to negotiate in good faith the final lists of Custodians, search terms, and time periods. If the Parties do not reach an agreement, they shall seek relief pursuant to the Court's rules.

Notwithstanding prior agreement on the search terms to be used for electronic searches, should a search produce an unreasonably large number of non-responsive or irrelevant results, the Parties shall (at the producing Party's request) meet and confer to discuss application of further negative search restrictions (*e.g*., if a single search was for "card" and ninety percent of the resulting documents came from the irrelevant term "credit card," a negative limitation to ignore documents only returned as a result of "credit card" may be applied to remove these documents). The Party receiving production shall not unreasonably oppose such further restrictions designed to filter immaterial search results.  The Parties will run the search terms identified pursuant to item ii, above, and will exchange reports as to the "hits" returned by each search term.  If necessary, the Parties will meet and confer in an effort to revise the search terms based upon the hits returned in order to make them more efficient, if possible.

Further, notwithstanding prior agreement on the Custodians, search terms and/or other proposed limitations to be used for email searches, as fact discovery continues, should a Receiving Party believe, in good faith, that discovery is needed with respect to any topic which it believes was not captured by the prior agreed-upon Custodians, search terms, and/or other limitations, such Receiving Party shall promptly notify the Producing Party in writing. The Parties agree to meet and confer in good faith in connection with any such notification. The Producing Party shall have the right to object to any request for modification of the previously agreed-upon Custodians, search

terms and/or other limitations. If the Parties do not reach an agreement, they may seek relief pursuant to the Court's rules.

B.     <u>Application of Search Terms</u>: Each Party's agreed-upon search terms shall be applied to each of such Party's agreed-upon Custodians' emails subject to any date range(s) and/or other limitations as agreed upon by the Parties. All queries will be run in a non-case sensitive manner, except as otherwise specifically provided.

C.     <u>Production of Custodian Emails</u>: Subject to the removal of any privileged/non-responsive documents, and pursuant to the technical specifications set forth in Section VI, below, the Parties shall produce the Custodian emails hitting on one or more search terms on a rolling basis.

D.     <u>Privilege Logs</u>: The Parties agree that they will exchange privilege logs for documents withheld on the basis of privilege, in conformance with the requirements of Local Civil Rule 26.2(a)(1) and (2). The Parties reserve the right to seek disclosure of any documents which they believe were improperly withheld under a claim of privilege.

E.     The production of the produced ESI, whether made pursuant to this ESI Agreement or otherwise, is not, and is not intended to be, a waiver of any objection which the Producing Party may have regarding the use of the produced ESI, and the Producing Party expressly reserves: (i) all questions about the competency, privilege, relevance, materiality, and admissibility of the Produced ESI; (ii) the right to object to the use of the Produced ESI on any or all grounds including, without limitation, settlement communications, competency, privilege, relevance, materiality, and admissibility of all documents; and (iii) in the event that a privileged document is inadvertently produced, the right and privilege is hereby reserved and retained to demand the return of any such document and all copies thereof.

**V.**     PRODUCTION OF HARD COPY DOCUMENTS.

A.     Paper or hard copy documents that are designated for production shall be provided electronically, in single page, Group IV TIFF image format (1 bit, black and white) with an .opt image cross-reference file and a delimited database load file (i.e., .dat) with applicable objective coding fields. The delimited database load file shall include the page-document relationship, Bates number, page count, and OCR'd text.

B.     If a produced TIFF image is unreadable or appears to be otherwise missing information, the Receiving Party may notify the Producing Party who will reproduce the document or portion of the document if the original document is not similarly obscured. The Parties will discuss reasonable requests for production of color or oversized documents on a document-by-document or category-by-category basis.

C.     The Producing Party shall produce hard copy documents to the Receiving Party with the following metadata fields (to the extent available):

    i.      BEGBATES -- Beginning production number or Bates number for a given file/document

    ii.      ENDBATES -- Ending production number or Bates number for a given file/document

    iii.      BegAttach -- Beginning production number or Bates number for an attachment to a given file/document

    iv.      EndAttach -- Ending production number or Bates number for an attachment to a given file/document

    v.      PAGECOUNT -- Number of pages for the document

    vi.      TEXT -- Relative path to OCR text file

    vii.      Confidentiality -- Confidentiality Designation

    viii.      Redaction -- Redaction reason

    ix.      Custodian -- Custodian or Source

D.     Alternatively, the Producing Party may elect to produce paper or hard copy documents in PDF format, bearing consecutive Bates stamps on each page of every document produced.

## VI.    TECHNICAL SPECIFICATIONS FOR PRODUCTION OF ESI

A.     <u>ESI Production Format</u>: ESI shall be produced electronically as single page, uniquely and sequentially numbered TIFF image files not less than 300 dpi resolution to enable the generation of searchable text using Optical Character Recognition ("OCR"), with the exceptions outlined in Section B below. Where text may be extracted when the TIFF image file is generated, the image file shall be accompanied by a text file containing the extracted text. The text files shall be named to match the endorsed number assigned to the image of the first page of the document. The producing Party shall apply an OCR process to produced image and text files to generate text searchable files. The images and text files shall also be accompanied by image cross-reference load files in the formats reasonably requested by each Party providing the beginning and ending endorsed number of each document and the number of pages it comprises. The producing Party shall also provide a data load file ("Data Load File") corresponding to the TIFF image files and the full text files that shall contain the requested metadata as defined below. Data Load Files will be provided in Relativity style (.opt and .dat) format or in the format requested by each Party.

B.     <u>Native Files</u>: The Parties acknowledge that production in TIFF format may be inadequate for certain types of ESI (e.g., spreadsheets, CAD files, scheduling/P6 files). The producing Party will produce in native format all audio, video, drawing/autocad, schedule/P6 and spreadsheet-type files, including but not limited to Microsoft Excel and CSV. Microsoft PowerPoint documents do not require production in native format, unless they contain video. To the extent that any Party believes that native files should be produced for a specific document or

class of documents not required to be produced in native format pursuant to this paragraph, the Parties shall confer in good faith. The producing Party shall use reasonable efforts to avoid producing system and application files. The Parties will discuss any specialized database files (i.e., Microsoft Access, SQL, SAP, etc.) that are responsive to the Parties' requests and reach agreement on the most reasonable form of production before any such production is made. During the confer process, the producing Party shall provide information concerning the available database fields sufficient to determine the most reasonable form of production. Any native files that are produced shall be produced with the source file path provided, as well as all extracted text and applicable metadata fields set forth in Section IV(E). To the extent native files are produced without an accompanying rendering of TIFF images, a slip-sheet will be produced in TIFF format to facilitate Bates and confidentiality stamping. The Parties shall confer to agree upon a protocol for the use of native files during the pendency of this action. If documents requested in native format require redactions, the parties will produce TIFF images for those documents, except that for Excel and spreadsheet files, the parties will confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. The native files shall be produced in a folder named "Natives."

C.     Attachments: The Parties shall produce email attachments sequentially after the parent email. The Parties shall confer at a later date over the inclusion of embedded files in document productions.

D.     Structured Data: Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Thus, a Party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table. These reports or data tables will be

produced in a static format. The Parties agree to identify the specific databases, by name, that contain the relevant and responsive information that Parties produce.

E.   <u>Metadata</u>: The Parties agree to produce the following list of metadata fields (to the extent available) to accompany each produced ESI file. Unless otherwise specified, by producing metadata, the producing Party affirms that such metadata came, in unaltered format, from its records, with the exception of vendor-entered source/Custodian and document/production number fields. However, the Parties are not obligated to include metadata for any document that does not contain such metadata in the original. The following list identifies the metadata fields that will be produced (to the extent available):

- ProdBeg (Bates number of the first page of a document)
- ProdEnd (Bates number of the last page of the document)
- AttachBeg (Bates number of the first page of a parent document)
- AttachEnd (Bates number of the last page of the last attachment to a parent document)
- Page Count (number of pages in a document)
- File Title (title data for electronic documents)
- Subject (for emails only)
- Sent Date & Time (for emails only)
- Created Date & Time
- Last Modified Date & Time
- Parent Date & Time
- File Name (for both electronic documents and attachments to an email)
- File Extension
- File Author
- File Path
- From (for emails only)
- To (for emails only)
- CC (for emails only)
- BCC (for emails only)
- Custodian
- Confidentiality
- Redactions
- MD5 or SHA-1 Hash Value

Notwithstanding the foregoing, the Parties will confer in good faith prior to the production of documents, with their respective vendors/eDiscovery staff as needed, to clarify or resolve any issues (e.g., definitions of metadata fields, inconsistencies, burden) concerning the production of metadata and will modify this Order to reflect any changes hereto.

F.      Duplicates: To the extent identical copies of documents (i.e., documents with identical hash values) appear in the production, the producing Party shall make reasonable efforts to produce only one such identical copy across all Custodians.

G.      Encrypted or Password-Protected ESI: For any ESI that exists in encrypted format or is password-protected, the producing Party shall undertake reasonable efforts to provide the receiving Party a means to gain access to the files. In the event that files are not decrypted prior to production, the Parties shall meet and confer in an effort to supply passwords and other information that will enable the receiving Party to obtain access.

H.      Document Image Format: With the exception of databases and native ESI discussed in Sections IV(A)-(B), or unless otherwise agreed to in writing by the requesting Party, ESI shall be produced electronically as a single-page, Group IV, 300 DPI TIFF image. The TIFF images shall be produced in a folder named "Images."

I.      Redactions: All redactions of a static image should be clearly indicated on the static image.

J.      Color: If an original document contains color, the document may be produced as a black and white TIFF image as set out in Section IV(K) below, subject to the provisions of Section IV(B) above regarding native files. However, in order to address situations where color may be necessary to most fully understand the content or meaning of a particular document or documents,

the parties reserve the right to request production of color documents in native or JPEG format from the producing Party at a later date.

K. <u>Document Unitization</u>: For files produced as TIFF images, each page of a document shall be electronically saved as an image file. If a document consists of more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes shall be maintained as it existed when collected by the producing Party. If unitization cannot be maintained, the original unitization shall be documented in the Data Load File or otherwise electronically tracked. For ESI, all unitization should be defined within the Data Load File, including the designation of parent/attachment for both email and attachments and for compressed files (such as .zip or .rar files) and their contents.

L. <u>Bates Numbering and Other Unique Identifiers</u>: Each static image page of a produced file shall be named with a Bates number for each page, followed by the extension ".tif." For example, if a native file is converted to three (3) static images, the produced images shall be named "ABC-00000001.tif," "ABC-00000002.tif," and "ABC-00000003.tif." For files produced as TIFF images, each page of a produced document shall have a Bates number electronically endorsed onto the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with. In the event that a native file is produced and the receiving Party prints it for use as exhibits to briefs, depositions, or trial, each page will be endorsed using a suffix for page identification purposes. For example, if document "ABC-00000001" is produced as a native file and printing the file results in three (3) pages of printed paper, the pages will be endorsed and identified as "ABC-00000001_001," "ABC-00000001_002," and "ABC-00000001_003." Any Party producing ESI in a native data format only shall produce a corresponding slip sheet in TIFF format. However, if employing the above method for production of ESI in native

format only is unduly burdensome or costly to the producing Party, the Parties shall confer over whether the producing Party may employ a different method for purposes of identification, such as a storage device (i.e., CD, flash drive, hard drive) containing such files, which shall be Bates numbered.

      M.    <u>Extracted Text and OCR Files</u>: For each document produced in TIFF format, a single text file shall be provided along with the image files and the metadata. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (e.g., non-searchable PDFs). In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text. Extracted text shall be provided in UTF-8 format text format. The text files shall be produced in a directory named "Text" or "OCR."

      N.    <u>Production Media</u>: Documents shall be produced via flash drive or external hard drive (with standard PC-compatible interface), file transfer site or FTP, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "production media").

      O.    <u>Time Zone</u>: To the extent any ESI (e.g., emails) contain an option to select a time zone, all productions shall be made using U.S. Eastern Time Zone, the time zone applicable in the Project location. This will enable consistency for purposes of deduplication of emails and other electronic documents and will create uniformity such that the chronology of emails and other documents can be easily ascertained.

## VII.    APPLICABILITY

A.      The procedures and protocols set forth in this Protocol shall govern the production of Documents between and among the Parties in this action. Any practice or procedure set forth herein may be varied by written agreement of the Parties.

B.      Nothing in this Protocol creates an obligation for any Party to produce ESI on back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium.

C.      The Parties shall not be obligated under this Protocol to produce any ESI that is no longer within their possession, custody or control (*i.e.*, lost or deleted) as a result of the good-faith operation of an electronic information system or document retention policy, unless the Party requesting such ESI establishes that there is good cause to believe that the Party from whom such ESI is being requested intentionally or recklessly failed to preserve, deleted or destroyed the ESI while under an obligation to retain it.

D.      Notwithstanding anything to the contrary herein, the following document types are not discoverable in this action except upon a showing of good cause:

a.      Back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium.

b.      Temporary data stored in a computer's random access memory or RAM.

The Parties shall meet and confer to resolve any disputes that arise under this Agreement. In the event the Parties cannot reach agreement on a disputed matter, a Party may submit the matter to the Court.

## VIII.   RIGHT TO SEEK ADDITIONAL DISCOVERY

The Parties agree that they shall proceed in good faith in all respects concerning the

production of documents and ESI hereunder. Nothing in this Protocol is intended to limit a Party's ability to seek additional discovery either by negotiation or by seeking, upon good cause and demonstration of need, relief from the Court.

## IX.   CLAWBACK/NON-WAIVER AGREEMENT

A.     The inadvertent production by a Party of documents or ESI ("Discovery Material") subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection will not waive the applicable privilege and/or protection if a request for return of such inadvertently produced Discovery Material is made, regardless of the degree of care taken to prevent said disclosure, except that:

1.     Affirmative use of ESI or a document by the producing Party in the case (*e.g.*, as an exhibit to a pleading, deposition, hearing, etc.) waives privilege and protection with respect to it; and

B.     If the receiving Party discovers material or documents that appear to be privileged in the producing Party's document production, the receiving Party will immediately notify the producing Party of such discovery and seek direction as to whether such material or document was inadvertently produced. If the producing Party identifies such material or document as privileged, the Parties shall proceed in accordance with subparagraph C below.

C.     Upon a request from the producing Party which has inadvertently produced Discovery Material it believes is privileged or protected, the receiving Party shall immediately return such or certify destruction of the protected Discovery Material and all copies to the producing Party (subject to the provisions of subparagraph VII.D below), except for any pages containing privileged markings by the receiving Party which shall instead be destroyed and certified as such by the receiving Party to the producing Party.

D.     In the event the receiving Party disagrees with the claim of privilege, the receiving Party may sequester all such material that is subject to a claim of privilege and write to the Party claiming privilege stating the reasons why it disagrees within five (5) days of receiving written notice of any claim for a clawback. In the event that there is a dispute over whether the material at issue is privileged, the receiving Party shall not further use or disclose the material unless and until the Court finds that the material is not privileged. The receiving Party shall cease using any work product setting forth material subject to the claim of privilege in the clawback until determination of the privilege claims. If the Court ultimately finds that the material is privileged, the receiving Party shall return and/or destroy the privileged material and destroy any portions of work product containing the material as to which the privilege is sustained, within three (3) days of the Court's finding. Either Party may move the Court to resolve the dispute, but it shall be the burden of the Party claiming privilege to establish the grounds for the privilege claimed.

## X.     CONFIDENTIALITY AGREEMENT

A.     The Parties have the right to designate as confidential, in whole or in part, any discovery material in this action that any Party believes in good faith contains confidential commercial or financial information or any other proprietary or confidential business or personal information ("Confidential Discovery Material").

B.     Confidential Discovery Material produced in this case, and copies thereof, and the information contained therein, shall be made available to and inspected by the following persons only:

1. The Parties, their officers, employees, and agents who are assisting in prosecuting or defending this action;

22

2.   Counsel for the Parties and their assistants, paralegals or other persons associated with counsel, whose assistance is required by said attorneys in the defense or prosecution of this action;

3.   In-house counsel, if any, for the Parties and their assistants, paralegals or other persons associated with in-house counsel, whose assistance is required by said attorneys in the defense or prosecution of this action;

4.   Expert witnesses and consultants, and their employees, who are directly employed or retained by the Parties or by counsel for the Parties, to the extent that such disclosure is necessary for the prosecution or defense of this action;

5.   Any court reporters at proceedings in this action as well as any independent court reporters;

6.   Document handling, photocopying, or Electronically Stored Information ("ESI") consultants or companies retained by any Party or counsel; and

7.   Any person who would be entitled to review the Confidential Discovery Material as a result of contractual obligations such as agreements with insurers or reinsurers or pursuant to Local, State, Federal or other laws.

C.     Prior to receiving any Confidential Discovery Material under this Agreement, the Persons described in Sections IX(B)(4) must execute a copy of the "Agreement to Be Bound by Protective Order" (Exhibit A hereto) and serve it on all parties.

D.     All Confidential Discovery Material, including all copies and information obtained from such discovery material, shall, subject to the provisions hereof, be used by the person receiving it only in connection with prosecuting or defending this action. Confidential Discovery

Material shall not be used for any other purpose and shall not be disclosed to any person, or entity, except as provided herein.

E.    The Parties shall designate Confidential Discovery Material as follows:

1.    In the case of documents or other submissions, designation shall be made by stamping the document or submission ***"Confidential"*** at the time of production or otherwise notifying the receiving Party that the documents (or group of documents) should be treated as Confidential Discovery Material. Inadvertent failure to designate a document as "Confidential" may be corrected by supplemental written notice given as soon as practicable. In the event that counsel for any Party determines that the other Party has obtained Confidential Discovery Material through a third-party subpoena or other form of legal process, said Party may designate a document as "Confidential" by providing written notice given as soon as practicable, at which time the receiving Party shall stamp the legend ***"Confidential."***

2.    In the event the producing Party elects to produce documents and things for inspection, no marking need be made by the producing Party in advance of the initial inspection. For purposes of this initial inspection, all documents and things will be considered as stamped Confidential. Thereafter, upon selection of specified documents for copying by the inspecting Party, the producing Party shall mark the copies of such documents as may contain protected subject matter with the appropriate confidentiality marking at the time the copies are produced to the inspecting Party, or notify the receiving Party as soon thereafter as reasonably practicable that the documents (or group of documents) should be treated as

Confidential Discovery Material.

F.      The persons described in Sections VIII(B)(1) – VIII(B)(7) shall have access to the Confidential Discovery Material once they have reviewed the provisions of this Confidentiality Agreement and have agreed to be bound by the provisions of this Confidentiality Agreement by signing a copy of Exhibit A. The persons receiving Confidential Discovery Material are prohibited from disclosing it to any other person except in conformance with this Confidentiality Agreement.

G.      In the event that counsel for any Party determines that the prosecution or defense of this action requires that Confidential Discovery Material be disclosed to persons not otherwise authorized herein, such counsel shall provide the other Party with written notice by email or hand delivery of the intended disclosure (which shall specify with particularity the Confidential Discovery Material to be disclosed and the identity of the otherwise unauthorized person). This written notice shall be given not less than five (5) business days prior to intended disclosure. If within five (5) business days after receipt of such notice a Party objects in writing to such disclosure, the documents produced pursuant to this Confidentiality Agreement shall be treated as Confidential unless the Court orders otherwise.

H.      In the event that either Party receives a third-party subpoena or other form of legal process requesting Confidential Discovery Material produced in this action, the Party receiving such request will provide the initial producing Party written notice by email or hand delivery that such a request was received and provide a copy of the request with the written notice. The Party receiving the third-party subpoena or other form of legal process shall provide notice by email or hand delivery of the request to the initial producing Party within five (5) business days of receiving the subpoena and shall not produce the requested documents before its return date, unless the initial producing Party states in writing that it does not intend to seek protection in connection with the

third-party subpoena or other form of legal process concerning the Confidential Discovery Material. If the subpoena requires production of Confidential Discovery Material in less than fifteen (15) days, the Party must provide written notice to the initial producing Party by email upon receipt of the subpoena.

I.      This Confidentiality Agreement is intended solely for the purpose of facilitating the exchange of information between the Parties in this action, and confidential information disclosed will be held and used solely in connection with this action. Neither this Confidentiality Agreement, nor the production of any information under its terms, nor any proceedings undertaken pursuant hereto, shall be deemed to have the effect of any admissions or waiver by any Party of, or otherwise deemed to alter the confidentiality or non-confidentiality of, any protection or privilege available as to that information. Compliance with this Confidentiality Agreement shall not operate as an admission as to the admissibility, materiality or relevance of any information, or as an admission that any objection has or has not been validly or timely asserted. All objections with respect to admissibility, relevance, materiality of any information are specifically reserved.

J.      By signing this Confidentiality Agreement, a Party is not deemed to have consented or agreed to the production of any document, testimony or information or to have waived any objection to the production or use of any document, testimony or information in this or other action or waived any applicable privilege or legal protection. The placing of any *"Confidential"* designation on the face of a document produced shall have no effect on determining the authenticity or admissibility of that document at trial.

K.      This Confidentiality Agreement is without prejudice to the right of either Party or any non-party: (a) to apply to the Court for a protective order relating to any Confidential Discovery Material relating to any discovery or privilege in this action; (b) to object to the

production of documents it considers privileged or not subject to discovery; or (c) to apply to the Court for an order compelling the production of documents. Nothing herein shall prevent disclosure beyond the terms of this Confidentiality Agreement if the person or Party designating the material as confidential specifically consents in advance in writing to such disclosure.

L.      At the conclusion of this action, all discovery material labeled ***"Confidential,"*** including all copies, extracts and summaries and all documents containing information taken therefrom, shall be destroyed no later than thirty (30) days after final award or settlement of this action, except that counsel of record may retain one copy of the pleadings, correspondence and attorneys' notes relating to this action, subject to the other terms of this Confidentiality Agreement. As to such discovery, including copies, extracts, or summaries containing attorney work product, such documents may be destroyed by the receiving Party in lieu of returning such items to the producing Party.

M.      This Confidentiality Agreement shall be effective from the date on which it is entered and shall apply and be enforceable with respect to all discovery in this action, including material previously produced to the other Party, that any Party seeks to designate as ***"Confidential"*** pursuant to the terms of this Order.

N.      In the event a Party violates any term of this Confidentiality Agreement, the Parties hereby agree that the Court shall have the authority, if warranted by the circumstances surrounding such violation, to enter sanctions against the violating Party, including but not limited to monetary sanctions, injunctive relief, and/or awarding such other relief to the non-violating Party(ies) as may be appropriate.

## XI.    MODIFICATION

**THIS ESI AGREEMENT MAY BE MODIFIED BY MUTUAL AGREEMENT OF**

THE PARTIES OR BY ORDER OF THE COURT. IF A DISPUTE ARISES RELATED TO INTERPRETATION, MODIFICATION OR ENFORCEMENT OF THE ESI AGREEMENT, THE PARTIES SHALL FIRST ATTEMPT TO RESOLVE THE DISPUTE BETWEEN THEMSELVES. IF THE PARTIES ARE UNABLE TO RESOLVE THE DISPUTE AFTER A GOOD FAITH EFFORT, ANY PARTY MAY REQUEST THE ASSISTANCE OF THE COURT WITH PROPER NOTICE TO ALL PARTIES.

Respectfully submitted,                           Dated: January 12, 2024

**GORDON REES SCULLY MANSUKHANI, LLP**                  **TRIF & MODUGNO LLC**

_/s/ Peter E. Strniste, Jr._                              _/s/ Greg Trif_
Peter E. Strniste, Jr., Esq.                              Greg Trif, Esq.
One Battery Park Plaza, 28th Floor                        11 Broadway, Suite 615
New York, New York 10004                                  New York, New York 10004
Telephone: (212) 269-5500
Fax: (212) 269-5505                                              and
_Counsel for Plaintiff, United States of America for
the use and benefit of M. Frank Higgins & Co.,_          89 Headquarters Plaza
_Inc.; Counter-Claim Defendant, M. Frank Higgins_        North Tower, Suite 1201
_& Co., Inc.; and Third-Party Defendant_                 Morristown, New Jersey 07960
_Merchants National Bonding, Inc._                       Telephone: (973) 547 3611
                                                         Fax: (973) 554-1220
                                                         _Counsel for Defendant/Counter-Claim_
                                                         _Plaintiff/Third-Party Plaintiff, Dobco, Inc._
                                                         _and Defendant Liberty Mutual Insurance_
                                                         _Company_

**SO ORDERED**.

Dated:  January 23, 2024

         White Plains, New York

                                                         _____
                                                         Hon. Victoria Reznik,
                                                         United States Magistrate Judge

## **EXHIBIT A**

### **Agreement to Be Bound by Protective Order**

I, _____, acknowledge and declare that I have received a copy of the

Confidentiality Agreement ("Agreement") in UNITED STATES OF AMERICA for the use and

benefit of M. FRANK HIGGINS & CO., INC. v. DOBCO, INC., et al., United States District Court

for the Southern District of New York, Civil Action No. 22-cv-09599-CS-VR. Having read and

understood the terms of the Agreement, I agree to be bound by the terms of the Agreement and

consent to the jurisdiction of said Court for the purpose of any proceeding to enforce the terms of

the Agreement.

Name of individual: _____

Present occupation/job description: _____

_____

_____

Name of Company or Firm: _____

Address: _____

Dated: _____

_____
[Signature]